# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4032-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

N.W.S.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.I.S.,

      A Minor.

_____

      Argued telephonically March 31, 2020 –
      Decided April 28, 2020

      Before Judges Yannotti, Hoffman and Firko.

      On appeal from the Superior Court of New Jersey,
      Chancery Division, Family Part, Essex County, Docket
      No. FG-07-0011-19.

Ryan Thomas Clark, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Ryan Thomas Clark, on the briefs).

Amy L. Bernstein, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Diane L. Scott, Deputy Attorney General, on the brief).

Rachel E. Seidman, Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Rachel E. Seidman, Deputy Public Defender, of counsel and on the brief).

PER CURIAM

N.W.S. appeals from a judgment of the Family Part dated April 24, 2019, which terminated her parental rights to the minor child M.I.S. We affirm.

I.

We begin with a summary of the pertinent facts, drawn from the trial court's record. N.W.S. is the mother of four children: T.J.C. (born in August 2005); S.E. (born in August 2008); L.N.S. (born in January 2011); and M.I.S. (born in June 2017). In October 2008, the Division received a referral that N.W.S.'s mother was using heroin and had been absent from her drug treatment program. N.W.S. allegedly was living with her mother at the time, along with

her two oldest children. The Division investigated and determined that the allegation of neglect for inadequate supervision was unfounded.

In December 2011, the Division received a report that the Newark police had responded to a call that N.W.S.'s children were unsupervised. The Division investigated and determined that the allegation of inadequate supervision was unfounded. However, the Division decided that N.W.S. should be evaluated for drug use and receive parenting skills classes.

In February and April 2012, the Division referred N.W.S. for substance abuse assessments. On May 21, 2012, she tested positive for Phencyclidine (PCP) and was recommended for outpatient substance abuse treatment. N.W.S. did not comply with that recommendation. In August 2012, the Division again referred N.W.S. for substance abuse assessments.

N.W.S. entered drug treatment; however, in October 2012, the Division received a report that she had tested positive for alcohol and PCP and that she was unreceptive to the treatment program she was attending. The Division investigated the report and found the allegations were substantiated. N.W.S. admitted that she used PCP intermittently for seven years, and that she also used marijuana.

3

The Division effected an emergency removal of the children and placed them in resource homes. A few days later, the Division filed a verified complaint for care, custody, and supervision of the children. The Division again referred N.W.S. for a substance abuse evaluation, which recommended intensive outpatient treatment. She did not attend.

A January 2013 psychological evaluation resulted in recommendations that N.W.S. attend individual therapy, a substance abuse program, and parenting classes. The Division made appropriate referrals for these services but N.W.S. was largely uncooperative. She continued to test positive for PCP.

Meanwhile, in May 2014, psychological and bonding evaluations were completed, which resulted in a recommendation that N.W.S.'s parental rights to T.J.C., S.E., and L.N.S. be terminated. In February 2015, N.W.S. surrendered her parental rights to S.E., in favor of a relative.

She also surrendered her parental rights to T.J.C. and L.N.S., in favor of T.J.C.'s paternal grandmother. However, in 2016, N.W.S.'s parental rights to T.J.C. and L.N.S. were restored when T.J.C.'s paternal grandmother moved to Pennsylvania and was unable to obtain a license for her home in that state due to a pending criminal charge.

A-4032-18T1

Thereafter, in May 2017, Elizabeth Stilwell, Psy.D., performed psychological and bonding evaluations and recommended that N.W.S.'s parental rights to T.J.C. and L.N.S. be terminated. Dr. Stilwell concluded that the children required permanency, and that N.W.S. was unlikely to become a viable parenting option in the foreseeable future.

In June 2017, N.W.S. gave birth to M.I.S. N.W.S. did not list a father on the child's birth certificate. However, N.W.S. told the Division's investigator that D.S. was the child's biological father. She said he did not want to be involved.[1] At the hospital, N.W.S. and M.I.S. tested positive for PCP. The child did not, however, exhibit any withdrawal symptoms.

The Division substantiated N.W.S. for neglect. Upon M.I.S.'s discharge from the hospital, the Division removed M.I.S. on an emergency basis and filed a verified complaint for the child's care, custody, and supervision. The court granted the application and the Division placed M.I.S. in a non-relative resource home, where he remained since.

On June 27, 2017, shortly after M.I.S. was born, the trial court entered a judgment terminating N.W.S.'s parental rights to T.J.C. and L.N.S. We later

---

[1] The Division investigated but was never able to locate the child's father.

affirmed the trial court's judgment. N.J. Div. of Child Prot. & Perm. v. N.W.S., No. A-4833-16 (App. Div. Oct. 25, 2018), certif. denied, 237 N.J. 580 (2019).

In October 2017, the trial court found that N.W.S. had abused or neglected M.I.S. based upon her: continued use of PCP during her pregnancy, non-compliance with court-ordered substance abuse treatment during her pregnancy, and failure to attend the recommended number of prenatal doctor's visits. The court also found that N.W.S.'s failure to adequately address her substance abuse issues and maintain sobriety put M.I.S. at substantial risk of harm.

The Division thereafter provided N.W.S. with numerous referrals for substance abuse assessments, testing, and treatment; psychological evaluations and individual counseling; and supervised visitation. The Division also provided N.W.S. with transportation assistance.

N.W.S. was relatively consistent with visitation and participated in family team meetings in June 2017 and April 2018. She requested placement in a Mommy and Me program, but the Division informed her that she should focus on achieving sobriety before entering such a program.

N.W.S. had a brief period of sobriety, while she was in drug treatment between late-2017 and early 2018. However, after completing that treatment program in February 2018, she did not continue with the recommended weekly

A-4032-18T1

counseling and drug screening, and she returned to drug use. She tested positive for PCP in April 2018, and thereafter refused to cooperate with the Division's drug treatment referrals or drug tests.

N.W.S. never completed a psychological evaluation and she did not participate in individual counseling. The Division also had concerns about her behavior. In October 2017, N.W.S. was arrested and charged with aggravated assault. At times, she threatened the Division's caseworkers and supervisors. In addition, N.W.S. never provided the Division proof of employment or stable income.

In May 2018, the court approved the Division's plan of termination of N.W.S.'s parental rights followed by adoption, and in July 2018, the Division filed its guardianship complaint. Thereafter, the Division continued to refer N.W.S. for services. She did not complete any of the services. She was referred several times to Mark Singer, Psy.D. and once to Dr. Stilwell for psychological and bonding evaluations. She did not attend. She did not present a plan for M.I.S.

In April 2009, Judge Linda L. Cavanaugh conducted a trial on the Division's guardianship complaint. Dr. Stilwell and caseworker Arianna Concepcion testified for the Division. N.W.S. did not present any witnesses or

evidence. The Law Guardian for M.I.S. also did not present any testimony or evidence but supported the termination of N.W.S.'s parental rights.

Judge Cavanaugh filed a written opinion dated April 24, 2019, in which she found that the Division had established, with clear and convincing evidence, all four prongs of the "best interests of the child" test for termination of parental rights in N.J.S.A. 30:4C-15.1(a). The judge memorialized her decision in a judgment of guardianship dated April 24, 2019. This appeal followed.

## II.

On appeal, N.W.S. contends the trial court's findings are inadequate to support a judgment terminating her parental rights. She argues that the judge erred by finding that the Division established the criteria for termination of her parental rights with clear and convincing evidence.

A parent has the constitutional right to raise his or her children. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012). However, that right is "tempered by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." Ibid.

Accordingly, the Division may petition the court for an order terminating parental rights in the "best interests of the child" and must establish the four

A-4032-18T1

criteria in N.J.S.A. 30:4C-15.1(a).  The criteria "are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests."  In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999).  It is a fact-sensitive inquiry.  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007).

When a parent contests the termination of his or her parental rights, the court's function is to decide whether the parent can raise the child without causing further harm.  In re Guardianship of J.C., 129 N.J. 1, 10 (1992).  "The burden falls on the State to demonstrate by clear and convincing evidence that the natural parent has not cured the initial cause of harm and will continue to cause serious and lasting harm to the child."  Ibid.

The scope of our review of a trial court's judgment terminating parental rights is limited.  M.M., 189 N.J. at 278.  We must uphold the trial court's factual findings if they are supported by substantial, credible evidence in the record.  F.M., 211 N.J. at 448-49.  Furthermore, findings by the Family Part as to witness credibility are entitled to deference because of its expertise in family matters and because it is better able to evaluate the veracity of witnesses who testified before it.  N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014).

A-4032-18T1

A.  Prong One.

The first prong of the best interests test requires the Division to prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1).  This prong focuses on the negative effect the parent-child relationship has upon the child's safety, health, and development.  K.H.O., 161 N.J. at 348.  To establish prong one, the Division is not required to show that the child was physically harmed, and evidence that the child suffered emotional or psychological harm is sufficient.  In re Guardianship of K.L.F., 129 N.J. 32, 43-44 (1992).

Here, Judge Cavanaugh found that N.W.S. endangered M.I.S. by failing to address her substance abuse problem and by using drugs while she was pregnant with M.I.S., such that he tested positive for PCP at birth.  The judge stated that N.W.S. could not keep the child safe from harm, and that placing M.I.S. in her care "would clearly endanger the child's safety, health or development."

The judge noted that the evidence showed N.W.S. had not participated in recommended services before M.I.S. was born.  The judge also noted that N.W.S. remained uncooperative after she gave birth to M.I.S.  She did not participate in ongoing drug treatment, individual counseling, anger management

10

classes, or a psychological or bonding evaluation. The judge recognized that N.W.S. had brief periods of sobriety but she relapsed into drug use and remained incapable of providing a safe and stable home for the child.

The judge observed that N.W.S. appeared to love M.I.S.; however, she had not provided him with a safe and stable home since he was an infant. The judge stated that N.W.S. did not acknowledge responsibility for her situation, "did not seem to be able to grasp what she needed to do to have the child returned to her care," and "was unable or unwilling to accept the concept of a safe and stable home."

The judge further found that N.W.S.'s attitude and behavior had worsened over time. The judge stated that N.W.S. was "unwilling or unable to work with the Division and [its] providers to identify and follow the steps that might have provided the path by which she could have become a stable parent to her son." The judge found that N.W.S. never put M.I.S.'s needs before her own.

On appeal, N.W.S. argues that the record does not support the judge's determination that the "child's safety, health, or development" have been endangered by the child's relationship with her. She asserts that while M.I.S. tested positive for PCP at birth, the child did not exhibit any symptoms of exposure to illicit substances. She contends there is no evidence that the child

has sustained any "concrete" emotional or physical injury due to her drug use during pregnancy or after the child was born.

In support of her arguments, N.W.S. relies upon N.J. Dept. of Children and Families v. A.L., 213 N.J. 1 (2013). She contends the judge based her findings almost entirely upon her persistent use of drugs. We disagree. While N.W.S.'s longstanding and un-remediated use of PCP was a factor in the judge's decision, that was only one factor in the judge's findings on prong one.

The judge's findings also were based on N.W.S.'s failure to participate in many of the services the Division offered to her, her lack of employment, and her aggressive and disruptive behaviors, which showed that she was not capable of providing the child with a safe and stable home.

Furthermore, because M.I.S. remained in foster care, he was harmed because he was deprived "of necessary stability and permanency." N.J. Div. of Youth and Family Servs. v. T.S., 417 N.J. Super. 228, 245 (App. Div. 2010). The record supports the court's determination that the child's "safety, health and development" were endangered by his relationship with N.W.S.

B. Prong Two.

The second prong requires the Division to establish that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or

unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). In addressing this prong, the court must focus on whether the parent has overcome the harms that endanger the child and whether the parent is able to prevent further harm from the parental relationship. K.H.O., 161 N.J. at 348-49.

Judge Cavanaugh found that the Division had established that N.W.S. was unable or unwilling to eliminate the harm to the child from the parental relationship or provide the child with a safe and stable home. The judge accepted Dr. Stilwell's opinion that N.W.S. was incapable of safely parenting M.I.S. and would not be able to do so in the foreseeable future.

The judge reviewed the Division's long involvement with N.W.S., her non-cooperation with many of the services the Division had offered to her, including drug treatment, individual counseling, anger management, and parenting classes. In addition, the judge considered N.W.S.'s relapses into drug use and the deterioration of her behavior. The judge observed that N.W.S. failed to make appreciable progress in addressing the reasons for the child's removal from her care.

The judge also noted that N.W.S. did not establish that she had stable housing or employment. In addition, the judge pointed out that because of

13

N.W.S.'s persistent use of drugs, parenting deficiencies and behaviors, M.I.S. remained in the care of his resource parents and they provided him with a secure and nurturing home. The judge found that a delay in permanency would only add to the harm the child had sustained.

N.W.S. argues that the evidence does not support the judge's findings on prong two. She claims she never refused to work with the Division or attend services to which she was referred. She asserts she attended visitation and substance abuse treatment and sought admission to a Mommy and Me program. She notes that she had numerous visits with M.I.S., which she claims were successful. She also asserts that she never refused to permit the Division to assess her home.

We are convinced, however, that there is sufficient credible evidence in the record to support the judge's findings on prong two. While N.W.S. notes the positive aspects of her visitation with M.I.S., Dr. Stilwell testified that visitation alone is not sufficient to create a healthy, parent-child relationship. Dr. Stilwell also stated that N.W.S. was unlikely to become a viable parent within the foreseeable future. The record supports the judge's determination that N.W.S. is unable or unwilling to eliminate the harm to M.I.S. from the parental relationship, and a delay in permanency will cause further harm.

A-4032-18T1

C. <u>Prong Three</u>.

Prong three requires the Division to establish that it "made reasonable efforts . . . to help the parent correct the circumstances which led to the child's placement outside the home" and consider alternatives to termination of parental rights. N.J.S.A. 30:4C-15.1(a)(3). The reasonableness of the Division's efforts is not measured by whether they were successful in bringing about reunification of the parent and child. <u>In re Guardianship of DMH</u>, 161 N.J. 365, 393 (1999).

Here, Judge Cavanaugh found the Division made reasonable efforts to assist N.W.S. in correcting the circumstances that led to M.I.S.'s placement outside the home. The judge pointed out that the Division provided N.W.S. an array of services.

However, N.W.S. was largely non-compliant with these services. Moreover, N.W.S. did not benefit from the services she participated in, as evidenced by her continued drug abuse and her threatening and disruptive behaviors. The judge further found that the Division had considered alternatives to termination of parental rights.

On appeal, N.W.S. argues that the Division did not make reasonable efforts to address the circumstances that led to M.I.S.'s removal from her care. She asserts the Division failed to refer her to a Mommy and Me program and

15

did not explore a service offered by Reunity House to assist her with reunification. She also contends that the Division failed to consider alternatives to termination of parental rights.

The record shows, however, that the Division provided N.W.S. an extensive array of services during its lengthy involvement with her and her children. She refused to cooperate. She attended five substance abuse programs since 2013 but completed only one. She continued to use PCP. The Division reasonably determined that N.W.S. should not be referred to a Mommy and Me program until she became drug free and maintained sobriety.

The record also does not support N.W.S.'s contention that the Division failed to refer her for a bonding evaluation. She failed to report to two appointments with Dr. Mark Singer for psychological and bonding evaluations. The trial court entered an order dated February 27, 2019, which required N.W.S. to attend a psychological and bonding evaluation with Dr. Stilwell, which was scheduled for March 1, 2009. She did not comply with the court's order.

In addition, the record supports Judge Cavanaugh's finding that the Division considered alternatives to termination of parental rights. N.W.S. claims the Division ruled out K.L. as a potential placement based on what N.W.S. alleges was a temporary loss of electricity to K.L.'s home. However,

the Division ruled out K.L. because she was taking electricity from a neighbor, without the neighbor's permission, while caring for children the Division had placed with her.

The Division also considered and ruled out J.S. as a potential caretaker due to a positive drug screen and her unwillingness to agree to treatment. Neither K.L. nor R.S. challenged the Division's decisions. N.W.S.'s contention that the Division failed to consider alternatives to termination of her parental rights is entirely without merit.

D. Prong Four.

To establish prong four, the Division must establish that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). "[T]he fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355.

Here, Judge Cavanaugh found that the Division had established prong four with clear and convincing evidence. The judge accepted Dr. Stilwell's testimony and found that termination of N.W.S.'s parental rights would not do more harm than good. The judge noted that since he was born, M.I.S. had never been in N.W.S.'s care.

17

The judge pointed out that the child's resource parents have provided him with love and nurturing, and their home was the only home he has ever known. The judge noted that Dr. Stilwell testified that, based on her bonding evaluation, M.I.S. viewed his resource parents as his psychological parents. Dr. Stilwell stated that severing the child's relationship with his resource parents would cause him enduring harm, which N.W.S. would not be able to mitigate.

Judge Cavanaugh also noted that N.W.S. did not participate in a bonding evaluation with Dr. Stilwell. Therefore, Dr. Stilwell was unable to determine whether a bond existed between N.W.S. and M.I.S. Dr. Stilwell testified, however, that it was unlikely M.I.S. had any meaningful relationship with his mother. Dr. Stilwell further testified that the resource parents were capable of mitigating any harm to M.I.S. that might result from a termination of N.W.S.'s parental rights.

In addition, Judge Cavanaugh observed that the Division's visitation records showed that N.W.S. had "unquestionably warm and affectionate" interactions with M.I.S., and the judge stated that she believed N.W.S. loved the child. The judge found, however, that there was no evidence that N.W.S. had developed a healthy, meaningful relationship with M.I.S. The judge stated that M.I.S. needed more than visitation with his mother. He needed for N.W.S. to

provide for his safety, health, and development, and there was no evidence she could do so.

The judge concluded that through her own actions, N.W.S. had made herself unavailable to M.I.S. She failed to address the circumstances that resulted in M.I.S.'s removal from her care. The judge also found that a delay in permanency would only add to the harm M.I.S. had already suffered.

On appeal, N.W.S. argues that critical prong four evidence was lacking because the Division refused to refer her for a bonding evaluation. She contends there was no basis for Dr. Stilwell's opinion that she did not have a meaningful relationship with M.I.S. She notes that Dr. Stilwell did not observe his visits with M.I.S. She contends the observations of the Division personnel and its third-party service providers show that she and M.I.S. are bonded. Again, we disagree.

As we stated previously, the Division scheduled N.W.S. for a psychological and bonding evaluation with Dr. Stilwell and the court ordered her to attend. She did not comply with the court's order. Moreover, Dr. Stilwell testified that visitation does not necessarily create a healthy bond between a parent and a child. N.W.S. presented no testimony to rebut Dr. Stilwell's

opinions. We conclude there is sufficient credible evidence to support the judge's findings on prong four.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4032-18T1